UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20607-CIV-ROSENBAUM/SELTZER

DEMOCRATIC REPUBLIC OF THE CONGO,

    Plaintiff,

vs.

AIR CAPITAL GROUP, LLC, *et al.*,

    Defendants.

_____/

### ORDER ON DEFENDANTS' MOTION *IN LIMINE*

This matter is before the Court upon Defendants' Omnibus Motion *In Limine* [D.E. 95]. Defendants seek to exclude the report and testimony of Plaintiff's expert John Zappia and to preclude the introduction at trial of any evidence of special damages that were not pled in Plaintiff's Complaint. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion.

This case[1] involves fraud and contract claims and counterclaims surrounding an agreement to refurbish Plaintiff's Boeing 707 aircraft. *See* D.E. 1; D.E. 23. On January 29, 2013, Plaintiff disclosed to Defendants the report of its expert, John Zappia, who has been retained to offer opinions concerning the maintenance work performed on the aircraft and the damages allegedly suffered by Plaintiff. *See* D.E. 88, ¶ 8. Plaintiff supplemented the report on February 25, 2013, providing updated spreadsheets with adjusted dollar amounts, including a revised total damages figure of

---

[1] The details of the case have been recounted by the Court elsewhere and will not be reviewed here. *See* D.E. 24; D.E. 44,

$5,092,292.59. D.E. 113-2. Included in Zappia's figures are costs associated with chartering an aircraft to fly the President of the Democratic Republic of the Congo ("DRC") to a United Nations Summit in 2011 and 2012 and costs incurred by DRC's representatives when they stayed in Florida to resolve the aircraft repair situation. D.E. 95 at 7-8.

Defendants seek an order excluding the introduction of Zappia's report and his testimony concerning damages. *Id.* at 2. In support of their Motion, Defendants appear to renew their attacks on the timeliness and sufficiency of Zappia's report that were addressed in Defendants' prior motion to strike Zappia's report, D.E. 77. *Id.* at 2, 4-5. To the extent that Defendants again attack Zappia's report as untimely and deficient, the Court has already resolved those questions. *See* D.E. 138. Additionally, however, Defendants seek to preclude evidence of the damages asserted "for lack of foundation and a witness competent to testify." *Id.* Finally, Defendants seek to exclude any evidence of special damages that Plaintiff did not plead in its Complaint. *Id.*

**1. Lack of Foundation**

Federal Rule of Evidence 901 requires a proponent of evidence to authenticate that evidence by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Authentication may be satisfied by, among other things, testimony of a witness with knowledge that the evidence is what it is claimed to be. Fed. R. Evid. 901(b)(1).

Defendants assert that "the DRC should be precluded from providing damage calculations without a proper witness. Evidence of the damage calculation necessarily requires an expert who can testify as to how he or she derived the calculation from the hundreds [*sic*] damage claims set forth on the Zappia damage calculation." D.E. 95 at 5. Defendants add that Plaintiff's "failure to offer a competent witness to verify any such damages evidence or otherwise explain the complex

calculations that necessarily underlie Plaintiff's computations" requires the Court to prohibit Plaintiff from offering evidence of its damages calculations.[2]  *Id.* at 7.

Plaintiff has proffered the testimony of Zappia himself to lay a foundation for his report and the spreadsheets summarizing his damages calculations, "including explaining exactly what he did to create these exhibits and the source for every item on his exhibits." D.E. 113 at 2.  Because the Court has already ruled that Zappia is qualified to testify as an expert, *see* D.E. 138, and the Court can find no other reason why Zappia could not testify as to the authenticity of his own report and methodology, no basis exists for excluding the report at this point in time because it lacks foundation.  Accordingly, this aspect of Defendants' Motion is denied.

**2. Special Damages**

Under Florida law, special damages "are considered to be the natural but not the necessary result of an alleged wrong or breach of contract." *Augustine v. S. Bell Tel. & Tel. Co.*, 91 So. 2d 320, 323 (Fla. 1956).  Special damages are those that "do not follow by implication of law merely upon proof of the breach." *Id.*  But another way, special damages "consist of items of loss which are peculiar to the party against whom the breach was committed and would not be expected to occur regularly to others in similar circumstances." *Hardwick Props., Inc. v. Newbern*, 711 So. 2d 35, 40 (Fla. 1st DCA 1998) (citation omitted).  By contrast, general damages "are those which the law presumes actually *and necessarily* result from the alleged breach or wrong." *Id.* (emphasis added). Both general and special damages are types of actual, or compensatory damages, and, therefore, both general and special damages must be "foreseeable and normal consequences of the alleged wrongful

---

[2] The parties appear to agree that the nature of damages in this case requires expert testimony.  *See* D.E. 95 at 5-6; D.E. 113 at 5.

conduct." *Palm Devs., Inc. v. Ridgdill & Sons, Inc.*, 2009 WL 513027, at *5 (M.D. Fla. Feb. 27, 2009) (quoting *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1269 (S.D. Fla. 2004)); *see also Hardwick*, 711 So. 2d at 40 ("[S]pecial damages are not likely to occur in the usual course of events, but 'may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract.'" (citation omitted)).

Federal Rule of Civil Procedure 9(g) requires a party claiming special damages to specifically state that in its pleading. Fed. R. Civ. P. 9(g). The purpose of Rule 9(g) is to "inform defending parties as to the nature of the damages claimed in order to avoid surprise." *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962). "Evidence of special damages is inadmissible if those damages are not pled in the complaint." *Precision Tune Auto Care, Inc. v. Radcliffe*, 804 So. 2d 1287, 1292 (Fla. 4th DCA 2002) (citing *Bialkowicz v. Pan Am. Condo. No. 3, Inc.*, 215 So. 2d 767, 770 (Fla. 3d DCA 1968)). Permitting evidence of special damages absent proper pleading is "per se reversible error." *Carnival Cruise Lines, Inc. v. Nunez*, 646 So. 2d 831, 833 (Fla. 3d DCA 1994).

Defendants seek to exclude evidence of all special damages, including "claims that did not directly result from work within the workscope [agreement]," but attack only two particular categories of damages: costs associated with chartering flights to and from United Nations summits in 2011 and 2012 and costs incurred by the DRC's personnel during their stay in Miami from 2011 to 2013. D.E. 95 at 7-8; *see* D.E. 113 at 15. Defendants argue that the costs to charter official flights and house personnel do not necessarily arise as a matter of law from Defendants' allegedly wrongful conduct. D.E. 120 at 10. The Court agrees. The costs associated with flying government officials to a United Nations meeting are certainly "peculiar" to this situation and would not ordinarily arise from a breached aircraft-maintenance contract or fraud. Similarly, Plaintiff has pointed to nothing

that indicates that, as a result of Defendants' allegedly wrongful conduct, the DRC's personnel were actually and necessarily required to remain onsite in Miami for close to two years. Accordingly, these two categories of damages qualify as special damages.

Plaintiff's response focuses heavily on the fact that these damages were foreseeable and, hence, are recoverable under Florida law. D.E. 113 at 6-9. Plaintiff even points to depositions and email exhibits that suggest that Defendants were aware of the DRC's need of the plane for travel to the United Nations meetings. *Id.* at 8. Plaintiff's arguments, however, are misplaced. The question before the Court is not whether these damages are foreseeable—as noted, all compensatory damages, whether general or special, must be "foreseeable." The question is whether these damages are special damages, and, if they are, did Plaintiff plead its entitlement to them in its Complaint? Because the Court has found that these damages are special damages, it turns to whether Plaintiff has adequately pled them in its Complaint.

Plaintiff points to only a handful of allegations in its Complaint that it contends put Defendants on notice that it would seek damages associated with the charter flights and extended stay. In one paragraph, Plaintiff alleges that "DRC is in desperate need of the Aircraft." D.E. 1, ¶ 39. In addition, Plaintiff points to its breach-of-contract count, which asserts that the contract provided for the work to be completed within forty-seven days and that Defendants failed to do so. *Id.* ¶¶ 50-51; D.E. 1-1 at 3. Regarding the extended-stay costs, Plaintiff directs the Court to its allegation that it "has been forced to have representatives in Florida since May of 2011." D.E. 1, ¶ 42.

None of these allegations are sufficient, though, to put Defendants on notice that DRC obtained replacement air transportation and planned to seek those costs from Defendant or that DRC

planned to hold Defendants liable for the costs associated with having its personnel onsite in Florida for two years.  A thorough review of Plaintiff's Complaint similarly reveals no other allegation or demand that hints at the two categories of special damages discussed above.  Therefore, Defendants' Motion is granted to the extent that Plaintiff may not introduce damages evidence concerning the charter flights or extended stay.  However, to the extent that Defendants seek a broad exclusion of unspecific special damages, the Court cannot oblige.  Without identifying particular categories of damages, the Court cannot determine whether the damages are general or special, nor can it inspect whether the allegations of Plaintiff's Complaint give Defendants appropriate notice of those claims.

Accordingly, it is **ORDERED and ADJUDGED** that Defendants' Omnibus Motion *In Limine* [D.E. 95] is **GRANTED IN PART** and **DENIED IN PART** as described above.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 28th day of May 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:

The Honorable Barry S. Seltzer

Counsel of record