UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:12-CV-20607-ROSENBAUM/ SELTZER

THE DEMOCRATIC REPUBLIC OF THE
CONGO,

        Plaintiff,

vs.

AIR CAPITAL GROUP, LLC, MARIO ABAD,
individually, and JAIME SANCHEZ,
individually, and COMMERCIAL JET, INC.

        Defendants.

_____

## THE DRC'S MOTION TO ALTER, AMEND, OR CORRECT JUDGMENT

Plaintiff, the Democratic Republic of the Congo ("the "DRC"), by and through Rule 59(e) and/or Rule 60 of the Federal Rules of Civil Procedure, hereby moves to alter, amend or correct the judgment entered in this case on August 2, 2013 (D.E. 186) as set forth below.

### Preliminary Statement

Under Florida law, which the parties have stipulated governs in this diversity action, the DRC is entitled to an award of prejudgment interest as a matter of law. Accordingly, based on the statutorily prescribed interest rates and the applicable dates of loss, the DRC is entitled to have $298,867.74 in prejudgment interest added to the current judgment.[1] The breakdown of the DRC's pre-judgment interest calculation is specified in detail below.

In addition, with the respect to the amounts awarded in connection with the DRC's claim for fraud relating to the replacement engines and for violation of the Florida Deceptive and Unfair Trade Practices Act, the DRC also respectfully requests that the judgment be amended to

---

[1] Within the applicable deadlines provided by Local Rule 7.3, the DRC will also seek separate orders awarding it costs and attorney's fees.

reflect that these amount are awarded jointly and severally against ACG <u>and</u> Mario Abad. Both of these defendants were found by the jury to have defrauded the DRC and to have committed unfair and deceptive acts. (D.E. 181 at ¶¶12, 13, 24 and 25). Under applicable Florida law, because this case is not a negligence action, but rather involves intentional misconduct, there is no apportionment among joint tortfeasors (since Abad is a principal of ACG no apportionment between these two defendants makes sense in any event) and the common law doctrine of joint and several liability continues to apply to these claims. Thus, under the well-established law discussed below, this Court should also amend the judgment to reflect that the amounts awarded by the jury with respect to Count III (fraud regarding the replacement engines) and Count V (unfair and deceptive trade practices) should be awarded against ACG <u>and</u> Abad, jointly and severally.

I. **Under Florida law, the DRC is Entitled to Prejudgment Interest as a Matter of Law and thus the Judgment Should Be Amended to Include Pre-Judgment Interest**

In diversity cases, the availability and amount of prejudgment interest is ordinarily governed by state law. *See, e.g. AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)(holding district court should have applied state law to determine availability and amount of prejudgment interest). The Florida Supreme Court has repeatedly explained that Florida has adopted the "loss theory" of prejudgment interest which provides that "prejudgment interest is merely another element of pecuniary damages." *See Bosem, M.D. v. Musa Holdings, Inc.*, 46 So.3d 42, 45 (Fla. 2010)(citing *Arogonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla. 1985)). Thus, the Florida Supreme Court has emphasized:

> Under the "loss theory," . . . *neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation by the defendant of the*

> *plaintiff's property.* Plaintiff is to be made whole from the date of loss once a finder of fact has determined the amount of damages and defendant's liability therefor.

*Id.* (emphasis added). Indeed, Florida's adoption of the loss theory "***forecloses discretion in the award of prejudgment interest.***" *Id.* (emphasis added). In *Bosem,* the Florida Supreme Court further clarified that pre-judgment interest must be awarded in ***all cases*** where the loss is wholly pecuniary:

> In all cases, either of tort or contract, *where the loss is wholly pecuniary, and may be fixed as of a definite time, interest should be allowed as a matter of right, whether the loss is liquidated or unliquidated . . .* [T]he plaintiff will not be fully compensated unless he receive, not only the value of what he has lost, but receive it as nearly as may be as of the date of the loss."

*Id.* at 46 (emphasis in original)(citation omitted). Accordingly, because the DRC's loss is wholly pecuniary, it is entitled to prejudgment interest, as a matter of law, with respect to the amounts awarded by the jury in connection with Counts II, III, and V.

Florida Statute §55.03(1) allows the Florida Department of Financial Services to set the statutory rate of interest. For the relevant years, the rates were as follows:

| YEAR | RATE PER ANNUM | DAILY RATE |
|---|---|---|
| 2010 | 6% | 0.0001644 |
| 01/01/2011 to 9/30/2011 | 6% | 0.0001644 |
| 10/01/2011 to 12/31/2011 | 4.75% | 0.000130137 |
| 2012 | 4.75% | *0.000129781 |
| 2013 | 4.75% | 0.000130137 |

2*

---

[2] The daily rate for 2012 considers that 2012 is a leap year and this accounts for the slightly different daily rate between 2012 and 2013

3

LEGAL\17049320\1

*see* Jeff Atwater, Chief Financial Officer, Florida Department of Financial Services, Statutory Interest Rates Pursuant to §55.03, Florida Statutes, http://www.myfloridacfo.com/aadir/interest.htm.

As to Count II, the claim for breach of contract, arguably the date of loss could be calculated based on the fact that all work on the workscope agreement was to be completed within approximately 47 calendar days of the aircraft's induction date (which was on July 31, 2010), and clearly was not. *See* Agreed Trial Ex.[3] 1 at p.3, Sec. 7, ¶ 3.  Also, the defective avionics work, and the overcharges for same on which the DRC's breach of contract claim was also based, occurred throughout 2010. *See e.g.* Agreed Trial Ex. 24.  And, the money had been wired by the DRC for these items no later than 11/9/2010.[4]  In an effort to be as conservative as possible and avoid extensive litigation on this issue, however, the DRC has utilized January 11, 2011 as the date of loss on which prejudgment interest should begin to accrue for purposes of the breach of contract claim as set forth below.  As the Court will recall, the DRC presented undisputed evidence in support of its breach of contract claim that Mr. Abad had assured the DRC that all work on the aircraft would be completed by the beginning of January, 2011 (*see, e.g.* Agreed Trial Ex. 79, "need you here on the first week of January as the delivery to you will take about 7 days") and, as all of the DRC witnesses testified (and no witness controverted this testimony), based on this assurance by Mr. Abad, the DRC sent its representative Zacharie Nankwaya who arrived in Miami on January 11, 2011 to accept delivery of the aircraft only to learn that work on the aircraft had not been properly done and was nowhere near complete. *See, e.g.* Deschryver Trial Transcript at 38-40 attached hereto as Exhibit C.

---

[3] The trial exhibits cited throughout this motion are attached as Composite Exhibit A.
[4] Indeed, Antonio Newman testified in trial that in October, 2010 ACG had over $2 million dollars of excess money from the DRC, and in November and December, 2010 ACG had over $1.5 million of excess money from the DRC. *See* Neuman Trial Transcript at 103 attached hereto as Exhibit B.

Utilizing the relevant interest rates and January 11, 2011 as the date of loss, the DRC comes to the following calculation of prejudgment interest for its breach of contract claim:

| Amount Owed | Dates | Days | Daily Rate | Per Diem | Interest for Period |
|---|---|---|---|---|---|
| $1,175,415.04 | 1/11/2011 – 9/30/2011 | 263 | 0.0001644 | $193.24 | $50,822.12 |
| $1,175,415.04 | 10/01/2011- 12/31/2011 | 92 | 0.000130137 | $152.96 | $14,072.32 |
| $1,175,415.04 | 1/01/2012 -12/31/2012 | 366 | 0.000129781 | $152.55 | $55,833.30 |
| $1,175,415.04 | 1/01/2013 - 8/1/2013 | 213 | 0.000130137 | $152.96 | $32,580.48 |
| | | | | TOTAL | $153,308.22 |

With respect to Count III, the claim regarding the replacement engine fraud, the most conservative date to use for the date of loss is November 23, 2010, the date on which ACG purchased the replacement engines which were determined by the jury to be contrary to Abad's representations to the DRC. *See* Agreed Trial Ex. 47. Based on the evidence presented at trial, the fraudulent misrepresentations regarding the engines were made by Abad in September, 2010 and the money for the purchase of the engines had been wired by the DRC no later than October 28, 2010,[5] but, again, to avoid needless litigation, the DRC has based its prejudgment interest calculation using November 23, 2010 as the date of loss.

Utilizing the relevant interest rates and November 23, 2010 as the date of loss, the DRC comes to the following calculation of prejudgment interest for its engine fraud claim:

| Amount Owed | Dates | Days | Daily Rate | Per Diem | Interest for Period |
|---|---|---|---|---|---|
| $362,707.03 | 11/23/2010 -12/31/2010 | 61 | 0.0001644 | $59.63 | $ 3,637.43 |
| $362,707.03 | 1/01/2011 – 9/30/2011 | 273 | 0.0001644 | $59.63 | $ 16,278.99 |

---

[5] Again, ACG's CFO, Antonio Newman, testified at trial that in October, 2010, ACG had over $2 million of excess money from the DRC. *See, e.g.* Newman trial transcript at p. 103.

5

| $362,707.03 | 10/01/2011- 12/31/2011 | 92  | 0.000130137 | $47.20 | $ 4,342.40  |
| ----------- | ---------------------- | --- | ----------- | ------ | ----------- |
| $362,707.03 | 1/01/2012 -12/31/2012  | 366 | 0.000129781 | $47.07 | $ 17,227.62 |
| $362,707.03 | 1/01/2013 - 8/1/2013   | 213 | 0.000130137 | $47.20 | $ 10,053.60 |
|             |                        |     |             | TOTAL  | $ 51,540.04 |

The evidence at trial established that Abad and ACG's unfair and deceptive acts began from the inception of the parties' relationship in June of 2010. In order to be conservative, however, the DRC has again utilized the date of January 11, 2011.

Utilizing the relevant interest rates and January 11, 2011 as the date of loss, the DRC comes to the following calculation of prejudgment interest for its unfair and deceptive trade practices claim:

| Amount Owed | Dates | Days | Daily Rate | Per Diem | Interest for Period |
| ----------- | ------------------------ | ---- | ------------ | -------- | ------------------- |
| $720,848.04 | 1/11/2011 – 9/30/2011    | 263  | 0.0001644    | $118.51  | $ 31,168.13         |
| $720,848.04 | 10/01/2011- 12/31/2011   | 92   | 0.000130137  | $93.81   | $ 8,630.52          |
| $720,848.04 | 1/01/2012 -12/31/2012    | 366  | *0.000129781 | $93.55   | $ 34,239.30         |
| $720,848.04 | 1/01/2013 - 8/1/2013     | 213  | 0.000130137  | $93.81   | $ 19,981.53         |
|             |                          |      |              | TOTAL    | $ 94,019.48         |

Thus, with the inclusion of prejudgment interest, the DRC respectfully requests that judgment be amended to reflect that the total damage award for Count II is $1,328,723.26 ($1,175,415.04 plus $153,308.22 in prejudgment interest), that the total damage award for Count III is $414,247.07 ($362,707.03, plus $51,540.04 in prejudgment interest), and that the total damage award for Count V is $814,867.52 ($720,848.04, plus $94,019.48 in prejudgment interest). The entire judgment amount, including prejudgment interest, should accrue interest as allowed under 28 U.S.C. § 1961.

6

LEGAL\17049320\1

II. **Under Florida law, Abad and ACG are Jointly and Severally Liable for Intentional Acts and thus the Judgment Should Be Amended to Reflect that the Amounts Awarded Pursuant to Count III and Count V are Awarded Against Both Abad and ACG, Jointly and Severally**

Florida Statute Section 768.81, Florida's comparative fault statute, provides for apportionment of damages between joint tortfeasors in *"negligence actions"* and displaces the common law doctrine of joint and several liability *to the extent the statute applies*. Florida courts have made clear, however, that the statute "is in derogation of the common law and must be strictly construed in favor of the common law" and "should not be interpreted to displace the common law any more than is necessary." *See, e.g. R. J. Reynolds Tobacco v. Sury*, 2013 WL 3155852, *3 (Fla. 1st DCA June 24, 2013)(citations omitted).

On its face, the statute "does *not* apply . . . *to any action based upon an intentional tort*." Fla. Stat. 768.81(4). The statute does not even apply where an action includes negligence claims but has as at "its core an intentional tort by someone." *R. J. Reynolds Tobacco v. Sury*, 2013 WL 3155852, *3 (Fla. 1st DCA June 24, 2013)(citations omitted). The "public policy behind the exclusion in section 768.81 for intentional torts is that intentional wrongs 'differ from simple negligence 'not merely in degree but in the kind of fault . . . . and in the social condemnation attached to it.'" *Id.* (citing *Merrill Crossings Assocs. v. McDonald*, 705 So.2d 560, 562 (Fla 1997)).

There is simply no basis whatsoever to argue that the DRC's claims for intentional fraud regarding the replacement engines and for unfair and deceptive trade practices fall within the statute's definition of "negligence action." *See* Fla. Stat. 768.81 (1)(c). Again, judgment for compensatory damages[6] in cases based on intentional torts or for violation of Florida's unfair and

---

[6] On the other hand, the Florida Supreme Court has indicated that *punitive* damages should be awarded individually against each defendant based on a special verdict form given the goal of punitive damages, *i.e*, punishment of each wrongdoer by exacting from his pocketbook a sum of money which, according to his own financial ability, will hurt,

LEGAL\17049320\1

deceptive trade practices action must be entered on a joint and several liability basis. *See, e.g. La Costa Beach Club Resort Condominium Assoc., Inc. v. Carioti,* 37 So.3d 303, 309 (Fla. 4th DCA 2000)(Florida law required that joint and several liability apply in an action based on an intentional tort); *Anden v. Litinsky,* 472 So. 2d 825, 826-827 (Fla. 4th DCA 1985)(affirming entry of judgment jointly and severally on FDUTPA claim against both entity which was the party to a construction contract at issue as well as the principal of that entity; where principal was "a direct participant" in the unfair and deceptive acts involving the construction of the home, "the trial court was eminently correct" in holding the principal jointly and severally liable with the entity); *Citibank N.A. v. National Arbitration Council, Inc.,* 2007 WL 106565, * 4 (M.D. Fla. 2007)(entering judgment jointly and severally against defendants on FDTUPA claim).

Apportionment of damages in this case was also erroneous since it is inappropriate to apportion damages between the primary actor (Abad) and a party vicariously liable for the primary actor (ACG). *See, e.g. Grobman, MD v. Posey*, 863 So.2d 1230, 1235 (Fla. 4th DCA 2003)("Vicarious liability does not mesh with the concept of liability that can be apportioned among joint tortfeasors. The vicariously liable party is responsible to the plaintiff to the same extent as the primary actor; both are jointly liable for *all* of the harm . . .")(emphasis in original). How could the jury possibly determine how much of the compensatory damages flowed from Abad's fraudulent conduct versus ACG's fraudulent conduct when ACG's fraudulent conduct was based on Abad's conduct?

For these reasons, the DRC did not agree to the Defendants' erroneous proposed verdict form which requested that the jury apportion damages between Defendants. Rather, in contrast to the verdict form proposed by the Defendants, the DRC submitted to the Court a proposed

---

but not bankrupt. *See, e.g. Lehman v. Spencer Ladd's, Inc.* 182 So.2d 402, 403-404 (Fla. 1965). Accordingly, the DRC's proposed verdict form requested that the jury separately assess any punitive damage awarded against any of the defendants.

verdict form which did **not** ask the jury to apportion compensatory damages between the defendants (D.E. 125-1, paragraphs 4, 15, 22, and 30).[7] The DRC respectfully believes that it was contrary to the clear-cut Florida law cited above for judgment to be entered severally against ACG, in light of the jury's findings that both ACG and Abad had defrauded the DRC in connection with the replacement engines and committed unfair and deceptive trade practices.

The Eleventh Circuit has made clear that under these circumstances—where a verdict has been improperly entered on a several basis instead of on a joint and several basis—the district court may properly amend the judgment and hold the defendants jointly and severally liable without requiring a new trial. *See, e.g. United States v. Sullivan*, 1 F.3d 1191, 1197 (11th Cir. 1993)("The district court may correct damage awards that initially allocate damages among defendants who are actually jointly and severally liable;" affirming the district court's decision to reflect in the final judgment that four defendants were actually jointly and severally liable for all damages awarded against those four defendants, although jury had allocated damages among these defendants); *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1573-1574 (11th Cir. 1989)(district court appropriately corrected verdict to reflect defendants were jointly and severally liable for the total amount of damages, rather than based on the apportionment of damages made by the jury)(citing *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 963 (5th Cir. 1981) and string cite of cases from Second, Fifth, and Tenth Circuits reaching similar holdings).

Florida courts have reached the same conclusion that a judgment can and should be amended to impose joint and several liability where it has been improperly entered on a several basis. *See, e.g. La Costa Beach Club Resort Condominium Assoc., Inc. v. Carioti,* 37 So.3d 303,

---

[7] Neither side requested a comparative fault jury instruction, nor was a comparative fault jury instruction given to the jury.

309 (Fla. 4th DCA 2000)(Florida law required that joint and several liability apply in an action based on an intentional tort; finding new trial not required but remanding case for entry of a final judgment reflecting joint and several liability rather than several liability); *Barton Protective Services, Inc. v. Faber*, 745 So.2d 968, 976 (Fla. 4th DCA 1999) ("comparative fault principles simply do not apply to intentional torts under Florida law;" affirming judgment but reversing apportionment of fault and remanding to trial court "for entry of judgment reflecting the joint and several liability of the defendants for damages and attorneys' fees and costs."); *University of Miami v. All-Pro Athletic Surfaces, Inc.*, 619 So.2d 1034, 1035 (Fla. 3d DCA 1993)(trial court erred in apportioning damages between defendants; on remand judgment should be entered imposing joint and several liability)

The DRC respectfully requests that the same amendment to impose joint and several liability occur here. After the lengthy trial in this case, the jury determined that the DRC met its burden of proving by a preponderance of the evidence that **both** ACG and Abad had intentionally defrauded the DRC in connection with the replacement engines and committed unfair and deceptive trade practices. Amending the judgment to properly reflect joint and several liability would aid the DRC in its effort to recover any of the compensatory damages determined by the jury to flow from the fraud and unfair and deceptive acts, and would help prevent the hard-fought judgment from simply being a very expensive piece of paper. In furtherance of the interests of justice, and to avoid fundamental error, the DRC thus respectfully requests that the judgment be amended to impose the joint and several liability required by Florida law.

LEGAL\17049320\1

## CONCLUSION

For the foregoing reasons, the DRC respectfully requests that the judgment in this case be amended: (i) to include prejudgment interest as calculated above and to reflect that post judgment interest shall accrue on the total amount of the judgment (inclusive of pre-judgment interest) at the legal rate of interest allowed under 28 U.S.C. § 1961; and (ii) to impose joint and several liability on ACG and Abad for the damages related to Count III (fraud regarding the replacement engines) and Count V (unfair and deceptive trade practices), together with such other and further relief as the Court deems necessary and appropriate.

    Respectfully submitted,
**COZEN O'CONNOR**
*Counsel for The Democratic Republic of the Congo*
Suite 4410
200 South Biscayne Boulevard
Miami, Florida 33131-4332
Telephone: (305) 704-5940
Facsimile: (305) 704-5955
By   */s/ Richard M. Dunn*
    Richard M. Dunn
    Fla. Bar. No.: 126953
    rdunn@cozen.com
    Raquel Fernandez
    Fla. Bar. No.: 55069
    rfernandez@cozen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of August, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served via ECF notification this day on

**Jay A. Gayoso, Esq.**
**Jay A. Gayoso, P.A.**
jay@gayosolaw.com
20801 Biscayne Boulevard, Ste. 506
Aventura, Florida 33180
Telephone: (954) 362-9133
Facsimile: (305) 692-7929
*Counsel for Air Capital Group, LLC, Mario Abad, and Jaime Sanchez*


By: ___/s/ Richard M. Dunn_____