# COMPOSITE EXHIBIT B

# ANTONIO NEUMAN
# TRIAL TRANSCRIPTS

57

```
            UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA
          Case No. 12-20607-Civ-ROSENBAUM
```

DEMOCRATIC REPUBLIC OF THE CONGO,) Volume 2 - Pages 57-318
                                 )
    Plaintiff/Counter-Defendant,)
                                 )
              -v-         )
                                 )
AIR CAPITAL GROUP, LLC, et al.,  )
                                 ) Fort Lauderdale, Florida
    Defendants/Cross-Defendants.) July 12, 2013
                                 ) 9:00 a.m.

```
            TRANSCRIPT OF TRIAL PROCEEDINGS
       BEFORE THE HONORABLE ROBIN S. ROSENBAUM
           U.S. DISTRICT JUDGE, and a jury
```

APPEARANCES:

For the Plaintiff        COZEN O'CONNOR
                            BY:  RICHARD M. DUNN, ESQ.,
                            JERMAINE LEE, ESQ., and
                            RAQUEL M. FERNANDEZ, ESQ.
                            200 South Biscayne Boulevard
                            Suite 4410
                            Miami, Florida   33131-2336

For the Defendants       JAY A. GAYOSO, ESQ.
                            20801 Biscayne Boulevard - Suite 506
                            Miami, Florida   33180

                            BOBBI L. MELORO, ESQ.
                            8551 West Sunrise Boulevard
                            Suite 300
                            Plantation, Florida   33322

REPORTED BY:              WILLIAM G. ROMANISHIN, RMR, FCRR, CRR
(305) 523-5558           Official Court Reporter
                            400 North Miami Avenue
                            Miami, Florida   33128

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

1  Ben raised a question about them and we investigated the
2  situation.  We couldn't find an answer to those despite the
3  fact that the representative that I have in the field --
4  because they didn't have anybody, again -- Mr. Peter Hoey, he
5  said that he reviewed the turbo compressor.  So we released
6  payment.
7            MR. LEE:  Your Honor, we're getting into --
8            THE WITNESS:  No.  You asked me and I'm getting to
9  the dates.
10           THE COURT:  All right.  Mr. Neuman, please listen to
11 the questions that are asked.  Answer only the questions that
12 are asked and please do not rely upon hearsay evidence, which
13 is things that other people said.  Okay?
14           THE WITNESS:  Your Honor, when we refer to
15 mistakes -- he asked me about mistakes -- this is a mistake
16 that happened, and I rely on my technical people for the
17 effects of making a payment, and a payment was made.
18           THE COURT:  Okay.  I understand and appreciate that.
19 But your answer cannot talk about what other people told you.
20 Okay?
21           THE WITNESS:  Okay.
22           THE COURT:  Thank you.
23           THE WITNESS:  That's another mistake that we found
24 and we removed it from the DRC charges.
25 BY MR. LEE:

1  Charles about it.
2        I don't know where you're trying to lead me with
3  this, but there was a conversation. I believe nobody refute
4  that conversation. The DRC claimed that they had a
5  conversation and there was a verbal agreement on the hush III
6  exit. Everybody knew. It was written everywhere there was
7  $1,350,000, and it's a responsibility to allocate and to have
8  funds ready if there is a hush III become available. I really
9  don't understand where you're trying to --
10 Q. You've lost me, Mr. Neuman. My question was simple.
11       Isn't it true that when you prepared this statement,
12 you did not know whichever vendor there was that was
13 supposedly going to charge you $1.35 million for a hush kit?
14 A. I responded, I didn't know who they were --
15       MR. LEE: Your Honor, can we just have him answer
16 "yes" or "no" before he explains --
17       THE WITNESS: No.
18       MR. LEE: -- so we can short-circuit this?
19       THE COURT: Mr. Neuman, I'd like you to please listen
20 carefully to the question and answer to the best of your
21 ability. You do have a chance to give a complete answer that
22 would be fair. But please don't go beyond the bounds of
23 that. It does make it a lot easier for everybody involved, if
24 the question is answerable by a "yes," a "no," or an "I don't
25 know," for you to start with that. Can we agree to do that?

1   THE WITNESS: Yes, Your Honor.
2   THE COURT: Thank you very much.
3   BY MR. LEE:
4   Q. My question again, Mr. Neuman, you were just telling us
5   that you had to have extra money to pay vendors, correct?
6   A. Correct.
7   Q. And isn't it true that when you sent this statement, you
8   did not know whether a vendor existed for this $1.35 million
9   you were telling the DRC you need money to pay, correct?
10  A. Correct.
11  Q. Thank you.
12      Let's go down again. Since you said there are
13  vendors, can you tell us which vendors that you were asking or
14  you were aware of that you knew needed to be paid for the
15  amount and the additional work?
16  A. To the best of my recollection, Commercial Jet and the
17  engine shop.
18  Q. And the ARC, correct.
19  A. And the ARC.
20  Q. That's three vendors.
21      You've got 15 items there, and those three vendors
22  are doing all of those 15 items?
23  A. There was a combination.
24  Q. "Yes," "no," "I don't know."
25  A. No, no.

NEUMAN - Direct (Lee)

137

1  THE COURT: Mr. Neuman, you have to wait for a
2  question. All right?
3  THE WITNESS: Yes. But, Your Honor --
4  THE COURT: Excuse me. Your attorney will have an
5  opportunity to come up and ask you questions to clarify.
6  THE WITNESS: Okay.
7  THE COURT: If there's a question that's asked, you
8  can give a complete and fair answer to the question that's
9  asked. But you have to wait for a question to be asked. All
10 right?
11 THE WITNESS: I apologize, Your Honor.
12 THE COURT: That's all right. Thank you.
13 BY MR. LEE:
14 Q. Now, I know we wanted to talk about January and February.
15 I don't have any statements similar to the ones we've seen
16 that were sent in January and February, but I do have a
17 statement you sent in March, which is Exhibit 54 that's
18 already in evidence. Okay?
19 A. Okay.
20 Q. So, what we're going to do is sort of the same exercise we
21 walked through. We're going to walk through that exercise
22 with the next statement you sent to see how much excess money
23 you had for the DRC.
24     So, this is an e-mail.
25     Let me go to the next page, the page of the

1  down, we need to do a final reconciliation of these numbers.
2  There's too many things that were just verbal agreements and
3  discussion between Mario and Charles. You have been having
4  this for a year and no comment whatsoever.
5       Now, when they come to Miami, the day they come to
6  Miami, they come very aggressive --
7       MR. LEE: Your Honor --
8       THE COURT: Mr. Neuman, Mr. Neuman, I want you to
9  listen to the questions. I really don't want to have to tell
10 you this again. Okay?
11      THE WITNESS: Okay.
12      THE COURT: But, please, listen to the questions.
13 Answer only the question that is asked. Your attorney will
14 have a turn and can ask you additional questions so that you
15 can further elaborate if there's something you want to
16 discuss. But this is not a time for you to say whatever is on
17 your mind. Do you understand?
18      THE WITNESS: Yes, Your Honor.
19      THE COURT: All right. Thank you.
20      Please continue.
21 BY MR. LEE:
22 **Q. Mr. Neuman, my question that we started out with is**
23 **whether or not you have an explanation -- let's move on.**
24 A. Germaine, you asked me if they asked for that. They
25 didn't ask.

1  it's irrelevant in the sense that the DRC knew what the price
2  was gonna be and the DRC already knew about that since 2010.
3  That's what I'm trying to clarify.
4  **Q. My question, Mr. Neuman -- Mike, if you can go back to the**
5  **next invoice -- was simply this. Earlier you testified that**
6  **this invoice was created in September 15, 2011, correct?**
7  A. That's what the invoice is telling, yes, correct.
8  **Q. And now you're telling us that that earlier testimony was**
9  **incorrect. This invoice was in fact created in 2010, is that**
10 **correct?**
11 A. That's incorrect, no. This invoice --
12           THE COURT: All right. Mr. Neuman, again, please,
13 just answer the question that's asked. Your attorney is
14 getting paid to ask you questions to explain your answers if
15 they're not otherwise explained on your side of the case.
16 Okay?
17           THE WITNESS: Okay.
18           THE COURT: Answer the question that the attorney is
19 asking you. You can give a complete answer to the question
20 that is fair to that question. Please do not keep going
21 beyond the bounds of the question asked or we will all be here
22 for the next three months.
23           THE WITNESS: Sorry.
24           THE COURT: So, please, I am asking you one last time
25 to listen to what I'm saying, listen to the attorney, answer

1 only the question that is asked, and trust that your attorney
2 will come back up there and ask you any questions to clarify
3 anything that needs to be addressed further. All right?
4     THE WITNESS: Sorry, Your Honor.
5     THE COURT: Thank you.
6     THE WITNESS: Yes, it was created in 2011, September
7 2011.
8 BY MR. LEE:
9 Q. I'm lost. So this invoice was created in 2011 or was it
10 in 2010? Because you've told me both. Which is it?
11 A. This invoice with the number 2011091504 was created in
12 2011.
13 Q. Perfect. Now back to my original question.
14     So you knew at the end of March 2011 that you'd only
15 paid ARC $192,300, correct?
16 A. Correct.
17 Q. And you created an invoice in September 2011, which is
18 after April, from the DRC that the amount is $217,000,
19 correct?
20 A. Correct.
21 Q. See how easy that was.
22     THE COURT: Mr. Lee, that's not necessary. Thank
23 you.
24     MR. LEE: All right. Sorry, Your Honor.
25     THE WITNESS: But I don't create invoices based on

NEUMAN - Direct (Lee)

195

          One question: Who gave you this invoice?
          THE COURT: Mr. Neuman, it is not time for you to ask questions. All right? Mr. Lee will ask the questions and you can answer them. If your attorney needs to follow up, he will do so.
          Please go ahead, Mr. Lee.
          MR. LEE: Thank you, Your Honor.
BY MR. LEE:
Q. Now, let's pull up the invoice -- let's keep this one on the screen for 192 and let's pull up the one you gave DRC when they asked for support, which is -- you're probably keeping track better -- I'll tell you in a second -- Agreed 21 is DRC 1596. Zoom in the amounts. Perfect.
          The one on the right is the one you gave to the DRC as support. The one on the left is the one that we got in response to the court request for records.
          There's a difference, and let me ask you this question first. I know when you talked about TEC, you told us about arrangements you had with TEC that we don't have.
          Is this sort of the same thing where you have similar arrangements with ARC that would explain this difference?
A. I believe that the one that was produced to you for $192,300 is not the final invoice.
Q. Which one is the final invoice, Mr. Neuman?
A. I believe it is the one for $217,400.

NEUMAN - Direct (Lee)

197

1 When did you subpoena this invoice?
2 THE COURT: Mr. Neuman --
3 THE WITNESS: No further questions.
4 THE COURT: Go ahead, Mr. Lee.
5 MR. LEE: Okay. Let's add those numbers up that you
6 say on the bottom. Let me add them up. Pull out your
7 calculator, please. Add those four numbers up. Thanks.
8 BY MR. LEE:
9 Q. They add up to $192,300, if I remember correct.
10 A. There's a balance, sir. We didn't have any balance by the
11 time you subpoenaed this. In cash by that time we already
12 paid the $192,300. There shouldn't be any balance. It's
13 something, it should say paid in full. That's not the final
14 invoice.
15 MR. LEE: Did you add them all, all four of them?
16 57,690, 58,400, and then the 48,075. Voila.
17 BY MR. LEE:
18 Q. So we know from ARC they received a check for $57,000,
19 they received another check for $58,400, and another check for
20 $28,135, correct? And they told you there was a balance left
21 of $48,075, correct?
22 A. According to that invoice, there is a balance, and this is
23 supposed to be the final invoice you received when you
24 subpoenaed them.
25 Q. The numbers now, we know the three checks plus this

NEUMAN - Direct (Lee)

199

1  A.  Yes.  And as I told you before, the Exhibit 152 is not a
2  final invoice.  You should get the final invoice, because it
3  has a balance.
4       So, let me understand something.  Your Honor, I need
5  to understand something and I think the jury has to understand
6  something as well.  If you subpoena something --
7       MR. LEE:  Your Honor, there's no question.
8       THE COURT:  All right.  Mr. Neuman, I've given you a
9  lot of latitude.
10      THE WITNESS:  Okay.  Okay.
11      THE COURT:  It's been several hours, and you need to
12 rely at this point on your attorney to ask you necessary
13 questions.
14      THE WITNESS:  Okay.
15      THE COURT:  Please answer the question that's
16 pending -- you can answer it fully and fairly -- but please do
17 not go beyond that.
18      Go ahead, Mr. Lee.
19      MR. LEE:  Thank you.
20 BY MR. LEE:
21 Q.  Now, we've done the math, given you 15 percent markup.
22 So, between one we received from ARC for 192 and the one you
23 gave us for 217, the difference is $28,855.  Do you want me to
24 do the math?  That's the overcharge, the overstated amount.
25 A.  According to you.

communication, no payments, nothing, no question on invoices, nothing. We just were working on the aircraft and getting it ready. They wired more than what we requested. They wired $600,000 more than what we asked for, and then we got confused instruction about that money. I remember that perfectly.

One instruction was this is to keep aside for additional expenses associated with the project, so keep this money for the additional expenses. And it's written in a letter from the DRC. So let's keep it there.

And then they sent, in Exhibit 34, they write and they said this is unrelated to the project. This additional money that we sent you has nothing to do with the project. We will give you instruction on how to move that money.

So, I have two letters: One saying this is for the project and one saying the additional money is unrelated to the project. That was the way we have communication with the DRC all the time.

We notified the DRC when we received the funds, the million three that he's claiming, that the additional funds were not gonna be moved --

THE COURT: Mr. Neuman, I'm sorry. The question, I believe, was did the DRC wire you additional funds.

THE WITNESS: Yes, Your Honor.

THE COURT: So, just answer that question.

THE WITNESS: Yes, Your Honor.