## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20607-CIV-COOKE/TORRES

THE DEMOCRATIC REPUBLIC OF
THE CONGO,

      Plaintiff/Counter-Defendant,

vs.

AIR CAPITAL GROUP, et al.,

      Defendants/Counter-Claimants.

_____/

## REPORT AND RECOMMENDATION ON PARTIES' RENEWED CROSS-MOTIONS FOR ATTORNEYS' FEES AND BILL OF COSTS

This matter is before the court on Plaintiff the Democratic Republic of the Congo's ("DRC['s]") Renewed Motion for Attorneys' Fees [D.E. 269] and Renewed Bill of Costs [D.E. 270], as well as  Defendant Jaime Sanchez's ("Sanchez['s]") Renewed Motion for Attorneys' Fees [D.E. 271] and Renewed Bill of Costs [D.E. 272].[1] Defendants Air Capital Group ("ACG") and Mario Abad ("Abad") ACG's CEO, filed a response to DRC's Motion for Attorneys' Fees [D.E. 280] to which DRC replied [D.E. 282]. DRC also filed a response to Sanchez's Motion for Attorneys' Fees [D.E. 281] to which Sanchez replied [D.E. 282]. The Motions are thus ripe for disposition.  Having reviewed the Motions, the relevant authority, and the record evidence submitted in

---

[1]    This matter was referred to the undersigned Magistrate Judge by the Honorable Marcia G. Cooke on February 10, 2016. [D.E. 275].  The Court had previously denied all four motions without prejudice pending the Eleventh Circuit Court of Appeals' ruling. [D.E. 246].

support or in opposition to the motions, the Court finds that DRC's Renewed Motion for Attorneys' Fees [D.E. 269] should be **GRANTED IN PART** and its Bill of Costs [D.E. 270] should be **GRANTED**. The Court also finds Sanchez's Renewed Motion for Attorneys' Fees [D.E. 271] should be **GRANTED IN PART and DENIED IN PART** and his Bill of Costs [D.E. 272] should be **GRANTED IN PART and DENIED IN PART** for the reasons set forth below.

## *I.   BACKGROUND*

This case involved a contractual dispute between DRC and Defendants over an agreement ("Agreement") in which Defendants agreed to repair DRC's aircraft. [D.E. 1]. DRC maintains it entered into the Agreement with ACG, a Florida limited liability company, and its CEO, Abad, and President, Sanchez, in connection with repairs to an aircraft it owned. *Id.* at 2. Abad and Sanchez are alleged to have inspected the aircraft themselves in the Congo prior to agreeing to work on the aircraft, which was delivered to Miami on or about July 31, 2010. *Id.* at 3, 5. DRC claims it was told all work on the aircraft would be performed at ACG's facilities and that it had paid ACG a total of $5 million for repairs by December 31, 2010. *Id.* at 6. The original estimate to repair the aircraft was $2,255,872.30. [D.E. 268 at 7].

It was not until January 2011 that Congo representatives learned on a trip to Miami that the repairs were not going to plan. *Id.* at 6-7. DRC contends Defendants continuously reassured the repairs were on schedule, but DRC had yet to receive the aircraft as of the filing of this lawsuit, although it was supposed to have been completed within 47 days of its delivery to Florida. *Id.* at 11. DRC also maintains it

had not had possession of the aircraft for 18 months, had paid ACG approximately $6.4 million, and had been forced to have representatives in Florida since May 2011 to supervise the project. *Id.* Furthermore, the aircraft was missing two of its four engines and DRC had been overcharged for repairs that had either not been performed or were performed improperly. *Id.*

DRC's Complaint alleged five counts against Defendants: fraud in the inducement (Count I), breach of contract (Count II), fraud (Counts III and IV), and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V). The case proceeded to trial and the jury returned a verdict in favor of DRC on Counts II-IV and in favor of DRC on Count V as to Defendants ACG and Abad only. [D.E. 232 at 2]. The jury awarded DRC damages as to Counts II, III, and V. *Id.* The Court amended this judgment in light of DRC's request to include prejudgment interest and reflect joint and several liability with respect to Defendants ACG and Abad. [D.E. 234]. Defendants ACG and Abad appealed to the Eleventh Circuit, but the Court of Appeals "affirm[ed] the judgment . . . in all respects." [D.E. 268 at 36].

The parties then filed the renewed Motions for fees and costs presently before this Court. DRC and Sanchez only seek fees under FDUTPA. Both motions depend in great deal on the interrelatedness of the work performed on both sides with respect to this count and DRC's other counts. That issue represents the crux of the parties' disputes.

## II. ANALYSIS

"Under FDUTPA, the Florida Legislature has declared that deceptive or unfair methods of competition and practices in trade and commerce are unlawful." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013). "To encourage citizens to invoke the protections of FDUTPA and file actions under that statute, the Legislature has provided that a prevailing party in a FDUTPA action may recover reasonable costs and attorney's fees from the non-prevailing party." *Id.* The statute provides: "In any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the non-prevailing party." Fla. Stat. § 501.2105(1). "To recover attorney's fees, subsection 501.2105(2) provides that the attorney for the prevailing party must submit a sworn affidavit regarding the time expended litigating a civil action involving a FDUTPA claim." *Diamond Aircraft*, 107 So. 3d at 370. "Subsection 501.2105(3) permits an award of attorney's fees for the hours actually expended on a civil action involving a FDUTPA claim." *Id.*

The complication here arises from determining an appropriate fee for the prevailing attorneys' work solely related to the FDUTPA count, in a case involving multiple claims and multiple parties. To begin to answer that we must address who the prevailing parties are. "The Florida Supreme Court has held that, in general, 'the prevailing party on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees.'" *Chow v. Chak Yam Chau*, 640 F.

App'x 834, 839 (11th Cir. 2015) (citing *Mortiz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992)). "In so holding, the Florida Supreme Court has taken guidance from the United States Supreme Court, which has 'held that the test is whether the party 'succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Chow*, 640 F. App'x at 839 (internal citations omitted). Thus, the Florida Supreme Court decided "the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court." *Id.* (citations omitted).

With respect to FDUTPA actions in particular, the Florida Supreme Court has also ruled that "to recover attorney's fees in a FDUTPA action, a party must prevail in the litigation; meaning that the party must receive a favorable judgment from a trial court with regard to the legal action, including the exhaustion of all appeals." *Diamond Aircraft*, 107 So. 3d at 368. Assessing attorney's fees under FDUTPA for other portions of the litigation would be inappropriate "if either (1) counsel admits that the other services provided in that action were unrelated to the FDUTPA claim, or (2) a party establishes that the services related to non-FDUTPA claims 'were clearly beyond the scope of a 501 proceeding.'" *Id.* at 370 (citation omitted). Simply put, "the purpose of FDUTPA's attorney's fees provision . . . is to award attorney's fees to the party that prevailed in civil litigation that involved a violation of FDUTPA—not for an action clearly beyond FDUTPA's scope." *Id.* at 371.

Once the trial court has determined that a party prevailed under FDUTPA, it has discretion to award attorney's fees based on various factors, including: "(1) the scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless; (6) whether the defense raised a defense mainly to frustrate or stall; (7) whether the claim brought was to resolve a significant legal question under FDUTPA law." *Humane Soc'y of Broward Cty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971–72 (Fla. 4th DCA 2007) (citing *Rosen v. Rosen*, 696 So. 2d 697, 700–01 (Fla.1997)). This list is non-exhaustive. *Id.* at 971.

Finally, once a gross amount of fees recoverable for the FDUTPA claim is determined, we must also apply the traditional lodestar calculation that we are all familiar with. The lodestar method consists of determining the reasonable hourly rate, then multiplying that number by the number of hours reasonably expended by counsel. *E.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). The applicant seeking fees bears the burden of documenting appropriate hours and hourly rates. *ACLU of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999). In awarding attorney's fees, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that

excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428.  To comply with that duty the Court should exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Georgia,* 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301).  This means that the "district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  The Court must disallow those hours requested that are excessive and should not be assessed against the non-prevailing party.

### A.  *DRC's Attorneys' Fees Motion*

DRC seeks $1,156,572.50 in attorneys' fees for prevailing on the FDUTPA claim under § 501.2105, jointly and severally against ACG and Abad. [D.E. 269 at 17]. It is undisputed that DRC prevailed against them on that claim, but ACG and Abad nevertheless argue that DRC is not entitled to all fees it seeks because "it made no effort to distinguish in its bills when it spent time on matters that were specifically related to its FDUTPA claims." [D.E. 280 at 3 ("Defendants object to the entirety of Plaintiff's fee request on the basis that Plaintiff's counsel's time records do not contain sufficient detail to enable a determination of time spent on the FDUTPA claims (with the exception of those handful of specific entries).").

Furthermore, these Defendants assert their "fee expert determined that at least $569,000 of the $1,156,573 in attorneys' fees sought by the DRC in its Motion for Attorneys' Fees has not been shown by DRC to be reasonably incurred in the

prosecution of DRC's FDUTPA claims against Air Capital Group and Abad." [*Id.*]. At the very least, ACG and Abad argue DRC is not entitled to the entire amount it seeks because of its failure to differentiate its time entries. [*Id.* at 11].

Defendants do not dispute the reasonableness of DRC's hourly rates, but argue it is not entitled to the entire amount it seeks. [*Id.*]. Although the jury awarded DRC $720,848.04 on its FDUTPA count against Abad and ACG, Defendants argue DRC "made no effort to distinguish in its bills when it spent time on matters that were specifically related to its FDUTPA claims. To the contrary, the DRC's time entries show that a great deal of its time was expended on matters that were unrelated to FDUTPA." [*Id.* at 3]. Alternatively, Defendants believe DRC is entitled to less than it seeks because "even though the FDUTPA claim arguably incorporated some of the other claims as part of its factual predicate, the DRC was unsuccessful on some of these other claims." [*Id.* at 12].

While these points may have some validity to them, they are not on firm footing with respect to attorneys' fees under FDUTPA in Florida. As previously discussed, assessing attorney's fees under FDUTPA for other portions of the litigation would be inappropriate "if a party establishes that the services related to non-FDUTPA claims 'were clearly beyond the scope of a 501 proceeding.'" *Diamond Aircraft*, 107 So. 3d at 370 (citation omitted). But in this case, DRC's overall claims, as evidenced by its theory of the case presented to the jury at trial, were all incorporated into its FDUTPA claim. "[The] FDUTPA claim was based on both allegations of fraud, and intentional breaches of contract, including falsification of invoices." [D.E. 269 at 3]. As counsel argued in

his closing argument, which Defendants helpfully attached to their response, the entire scope of misconduct that Defendants allegedly engaged in constituted a fraud and the type of unethical and unscrupulous conduct that the FDUTPA statute was designed to address. [D.E. 280-3 at 33-34]. The jury was indeed presented a global case in which both common law and statutory remedies were presented for their consideration, and, despite Defendants' response that not surprisingly minimized the impact of that evidence, the jury certainly interpreted that evidence in DRC's favor and awarded a substantial verdict on both types of claims.

For such a circumstance there is ample authority under Florida law that supports DRC's claim for recovery of FDUTPA fees where similar, intertwined claims were also presented to the jury. *See, e.g., Mandel v. Decorator's Mart, Inc.,* 965 So. 2d 311, 315 (Fla. 4th DCA 2007) (trial court correctly awarded attorney's fees for attorney time spent on fraud and breach of contract claims "[b]ecause the fraud and contract claims arose from the same 'common core' of facts as the Chapter 501 claim."); *Heindel v. Southside Chrysler-Plymouth, Inc.,* 476 So. 2d 266, 272 (Fla. 1st DCA 1985) (where complaint contained various claims based on the same transaction, no allocations of attorney's services is necessary except (i) to the extent counsel admits that a portion of those services was totally unrelated to the FDUTPA claim or (2) it is shown that the services were clearly beyond the scope of a section 501 proceeding); *La Ferney v. Scott Smith Oldsmobile, Inc.,* 410 So. 2d 534, 536 (Fla. 5th DCA 1982) (trial court abused its discretion by reducing fee award by 80% where FDUTPA claim was only one of 5

counts  included in the complaint and where breach of contract and fraud claims were part of the same underlying transaction).

*Mandel* illustrates the point very well.  There, like here, breach of contract, fraud and FDUTPA claims were brought together and presented together to the jury. The theory of that FDUTPA claim was that the same misconduct that underlaid the contract and fraud claims also supported a recovery under this statute.  "Evidence at trial relevant to one theory of recovery was also relevant to whether a deceptive or unfair trade practice had occurred." *Mandel,* 965 So. 2d at 314.  The Court's review of the record supported the claimant's theory that the "common core" of the case as it related to the other claims also sustained the FDUTPA claim. *Id.* at 315.  Indeed, the Court distinguished other cases that drew a distinction between contract and non-FDUTPA claims by pointing out that in a section 501 case "[t]ime spent on an intertwined contract claim could be recoverable under section 501.2105 even though the party seeking Chapter 501 fees was not the prevailing party on a related contract count." *Id.*  That conclusion thus reenforces DRC's position on its motion.

Defendants try in vain to distinguish *Mandel* and the other similar cases that DRC relies on, based on the theory that here there were a series of transactions that were at play, not just a single contract, and multiple parties who had varying degrees of involvement.  The Court's review of this record shows otherwise.  Rather than being a series of separate, isolated transactions, the evidence presented to the jury supported a conclusion – that the jury clearly adopted – that the "common core" of the case was a willful breach of contract that was followed by a series of fraudulent acts designed

to cover that up.  The damages awarded by the jury on the fraud and FDUTPA claims make sense in that light.   And Defendants' protests are not persuasive when juxtaposed against the overall record that the jury considered.  That finding is now final, and our assessment of the fees claimed under the statute should also be made using the same lens.

By that measure, Florida cases like *Mandel* doom the strongest part of the response in opposition to the fees.  DRC's fee application did not have to isolate only those particular time entries with the term FDUTPA in them.  The FDUTPA claim was part and parcel of the entire discovery and trial phase of the case.  It was central to the summary judgment briefing.  It was a critical component of the DRC's theory of the case.  And it proved to be successful based upon a positive award from the jury on that claim, as well as the sister fraud claim that was simply a common law remedy that addressed the same misconduct.  The Court cannot reject the fee request in this blanket fashion.

Defendants' response then takes pains to explain why the various discretionary factors that the Court should consider counsel against a fee award.  The record, however, also supports DRC's position on this score.  The scope and history of the litigation evidences that the FDUTPA claim was an important element of the case. The fraudulent misconduct that was central to the DRC's theory of the case falls squarely within the statute's ambit.  A fee award is also important to deter similar misconduct in the future. And the strength of DRC's case is self-evident from the jury's verdict.  These factors fully support a fee award in this case.

Accordingly, DRC has shown an entitlement to the gross amount of fees it seeks under FDUTPA, which totals $1,156,572.50. That, however, is not the end of the story. The Court's review of the fee application itself does evidence certain elements that the Court has discretion to excise. Attorney fees incurred in order to remove the aircraft at issue from a commercial jet facility is included, purportedly because this time was necessary to mitigate DRC's damages. That certainly may be true, but such time is more relevant to the underlying damage that DRC sustained than a legal fee necessary to present its case to the jury. There was also time included in the fee application that was block-billed and did not evidence a truly necessary expense. The burden always falls on the fee applicant to show that time incurred in a case was necessary. Not all of the time entries meet that burden.

In addition, the Court's review of the billing records evidences at times redundant billing by multiple timekeepers on the same projects. Certainly, the use of more than one or two lawyers on a complex commercial case like this one is necessary and expected. But a fee application must always disclose the necessity of using a large number of lawyers working on the same projects. As a whole, the application does not suffer from this problem. The Court notes, for instance, that there were specific functions that required different lawyers working on different projects. And in particular, the lawyers who attended the lengthy trial were generally limited to the two lead partners. So the Court finds that the use of multiple lawyers is, for the most part, supported by the litigation and the supporting materials. A small reduction, however, is still appropriate to address the instances where more than two lawyers were working on matters without a showing of special necessity.

To be fair, the bulk of the time reflected in the record – for discovery efforts, briefing of dispositive motions, and trial presentation – is fully supported and was plainly necessary for the successful outcome of the case.  A material reduction, therefore, is not appropriate to address the isolated deficiencies we found in the application.  DRC is entitled to a fee award that reflects this finding.

To arrive at the appropriate fee in light of these considerations, an hour-by-hour reduction is not practical.  *See Loranger v. Steirheim,* 10 F.3d 776, 783 (11th Cir. 1994); *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2011).  Under these circumstances, an across-the-board reduction is the more reasonable approach to take. The Court's review of the record shows that a fifteen percent reduction in the gross amount of fees requested adequately addresses unnecessary or non-compensable time found in the application, while still awarding a material fee in accordance with Chapter 501.

Applying that fifteen percent reduction here to the $1,156,572.50 requested yields a net fee award of **$983,086.63**.  That is the amount recommended herein on DRC's motion for attorneys' fees.

### B.   *DRC's Costs*

DRC also seeks $34,839.81 in costs. [D.E. 270-1 at 2]. The total amount requested includes the following fees: fees of the clerk ($363); fees for service of the subpoenas ($829.50); fees for printed or electronically recorded transcripts necessarily obtained for use in the case ($17,356.61); fees for exemplification and the costs of making copies of any material where the copies were necessarily obtained for use in

the case ($11,152.70); fees for witnesses ($765); and compensation of interpreters ($4,373). [D.E. 270-2]. Because DRC prevailed against Abad and ACG, and because the Court's review of the record shows that these costs were reasonable and necessary in the action, DRC should be awarded **$34,839.81** in costs.

### C.   *Sanchez's Own Attorneys' Fees Motion*

Turning to the shoe on the other foot, the sole prevailing Defendant – Sanchez – maintains he is entitled to $518,897.50 in attorneys' fees under FDUTPA because the jury awarded no damages against him on the FDUTPA count.[2] [D.E. 271 at 1]. But DRC now sees things differently.  DRC argues he is not entitled to this amount because the "Fee Motion makes no attempt whatsoever to segregate the attorney's fees which resulted solely as a result of counsel's representation of Sanchez, as opposed to counsel's representation of Abad and ACG." [D.E. 281 at 2-3].  Moreover, "DRC . . . believes that the granting of this motion in any respect, would simply result in the reimbursement of attorney's fees to ACG —the party which unquestionably lost in this case, and was found to have defrauded and committed unfair and deceptive trade practices against the DRC."[*Id.* at 3]. DRC points out that ACG has alone paid for all three Defendants' attorneys' fees, Defendants who were in fact all represented by the same counsel.  This purportedly negates Sanchez's claim to any fees. [*Id.* at 4].

More specifically, DRC maintains Sanchez has "failed to make any attempt to show what services were provided solely on *his* behalf as opposed to on behalf of FDUTPA violators, Abad and ACG." *Id.* at 6 (emphasis in original). Lastly, DRC

---

[2]   The jury found ACG and Abad were solely liable on DRC's FDUTPA count. [D.E. 181 at 8-9].

argues Sanchez is not entitled to fees because he has not "establish[ed] that additional effort was expended to defend the case because of the FDUTPA claim." *Id.* at 7.

Under section 501.2105(3), "[t]he trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit." But "[t]he burden of proof is on the party claiming attorneys' fees to prove entitlement and to 'document[] the appropriate hours expended and hourly rates'" when two or more parties were represented by the same attorney and only one party is entitled to fees. *Selrahc v. Burruss*, 233 F. App'x 819, 833 (10th Cir. 2007) (citation omitted).  And as we know from our prior discussion in connection with DRC's own motion for fees, Florida law only precludes an award of fees under FDUTPA where multiple claims were involved if  "a party establishes that the services related to non-FDUTPA claims 'were clearly beyond the scope of a 501 proceeding.'" *Diamond Aircraft*, 107 So.3d at 370 (citation omitted).

If DRC's arguments in opposition to this motion sound familiar, it is because they are.  They were all front and center in Defendants' opposition to DRC's fees.  But DRC made compelling counter-arguments of its own, in support of its fee application, why the FDUTPA claim was inextricably intertwined with both the unsuccessful contract claim and the successful fraud claim against Defendants Abad and Air Capital.  Now, that same persuasive showing bodes poorly for its defense of Sanchez's motion.  That is because DRC has not at the same time satisfied the Court that its non-

FDUTPA claims were clearly beyond the scope of its FDUTPA claims asserted against Sanchez.

For instance, DRC states in its motion for fees that its "FDUTPA claim was based on both allegations of fraud, and intentional breaches of contract, including falsification of invoices" [D.E. 269 at 3]. Notably, these claims were incorporated into its FDUTPA claim. [D.E. 1 at 16].  So the defenses to those same claims against Sanchez were consequently necessary for the defenses to the FDUTPA claim.  Sanchez thus similarly concludes that he too is entitled to fees under the statute as a result of this same reasoning.  Sanchez in effect protests that DRC wants its goose but not its gander.[3]

After all, DRC's own motion promotes the FDUTPA claim as a necessary tool to prevent unscrupulous conduct.  The flipside of that is that a successful defendant to a FDUTPA claim has standing to argue that it is necessary to award fees to a prevailing defendant to prevent someone from abusing the FDUTPA statute.  That too is an equally important public purpose.  In this case, for instance, DRC had control of its pleadings and had the right to make strategic decisions as to who it would include in its suit and for what claim.  Taking account of the breadth and scope of a FDUTPA claim, as well as its possible downside, is a strategic call that DRC and its seasoned lawyers had to have considered.

---

[3]    *See* Culinary Rule No. 1, as modified, cited at *Smith v. Unilife Corp.,* 2014 WL 6070697, at *1 (E.D. Pa. Nov. 13, 2014) (" 'Sauce for the goose is sauce for the gander' – a familiar proverb which cautions against inconsistent practices in life or the law – was referred to as 'Culinary Rule # 1' by Edward R. Becker, the highly esteemed former Chief Judge of the Third Circuit, when he was a trial judge.").

In hindsight, one could say that they should have limited the FDUTPA claim to the corporate defendant precisely because the downside of a successful defense of the claim by individual defendants (which was foreseeable) could yield them attorneys' fees and costs.  And it is likely no doubt that they did take this factor into consideration but chose instead, purposely, to include Sanchez in all the claims because they felt strongly about his involvement.  Again, a strategic decision that had pluses and minuses.

Sanchez now, however, makes a compelling argument that such strategic decisions should have consequences when it comes time to scan the battlefield for collateral damage.  Sanchez's successful defense of all the claims, especially the FDUTPA claim, represents (in litigation-speak) collateral damage.  And the same public purpose that DRC promotes in seeking attorneys' fees in this case as a prevailing party – the value of enforcing FDUTPA – must also apply to Sanchez because he was not the one who inserted that potent, but risky, remedy into the case.

The Court, therefore, finds that the record in support of Sanchez's motion fully supports an award of attorneys' fees in his favor given the jury's factual determination in the case.  Sanchez prevailed on the claims against him.  He stands on sound footing under the FDUTPA statute as a prevailing party entitled to his fees.

Yet, that finding can extend only to Sanchez.  His less successful co-defendants have no similar entitlement.  So despite finding Sanchez is entitled to fees, the Court also finds it improper for Sanchez to be awarded the entire $518,897.50 award that he seeks, which not surprisingly also represents the original post-judgment fee amount sought for the representation of both Abad and Sanchez (when Abad was arguing that he had no liability for money damages under the jury's verdict). [D.E. 221 at 3 and 19-

20] ("The total fees requested by Sanchez is $518,897.50. Abad seeks joint reimbursement of $518,897.50.")].  Now that Abad concedes he has no entitlement to fees following his unsuccessful appeal, Sanchez stands as the only prevailing Defendant but still maintains that he is entitled to the exact same dollar figure.  That seems wrong on its face, and indeed we find that it is wrong for several reasons.

First, the Defendants' attorneys did not differentiate between the work performed on behalf of ACG's and Abad's defense and that of Sanchez, or the number of hours dedicated solely to defending the FDUTPA claim. [D.E. 221 at 18]. Sanchez conceded this points in his original motion for fees: "The remaining issue is determining the reasonable number of hours expended on the FDUTPA claims. With respect to Sanchez, there is no question that it is difficult to break out the difference between the fraud claims in Count I and the FDUTPA claims in Count V." [D.E. 221 at 18].  Furthermore, Sanchez's Affidavit of Reasonable Attorneys' Fees prepared by expert Jeffrey Lapin, attached to Sanchez's motion for attorneys' fees, addressed the then motion for fees related to the representation of *both* Abad and Sanchez. [D.E. 271-4 (Affidavit dated October 16, 2013)]. No supplemental evidence has been provided to the Court that takes into account Abad's unsuccessful appeal and solely Sanchez's entitlement.

Second, it is notable that this same expert's initial assessment of the amount of fees to award for both Abad and Sanchez's defense was "that at least $400,000 of the time reflected in Defendants' Motion for Attorneys' Fees were reasonably related to the representation of Defendants in defense of the FDUTPA claims." [D.E. 271-4 at ¶9].

This amount represents less than the original amount sought based upon deductions the expert made for time entries that he could not tie to the FDUTPA claim. It is not clear to the Court why that lesser sum should not be the starting point of the analysis. But at minimum it reflects a recognition from Sanchez's camp that at least some reduction must be made to take into account the combined work for both a prevailing and non-prevailing defendant on the FDUTPA claim.

Third, Sanchez is admittedly correct in noting that "had the DRC removed Abad and Air Capital from this lawsuit, Sanchez still would have had a lawyer take all actions that were taken with the exception of a motion for summary judgment that was separately filed for Air Capital and Abad." [D.E. 282 at 3]. "All work done by counsel . . . would have been done regardless of whether Sanchez was the only defendant or one of five" with respect to the FDUTPA claim, which named all three defendants. *Id.* at 7. But this point also persuasively cuts against him. Had Sanchez not been named in Count V, his attorneys would have performed *the same* work in furtherance of Abad's and ACG's defense. Thus, awarding the entire amount Sanchez seeks in attorneys' fees would, as a practical matter, result in fees for the attorneys who would have done the same work (as far as the Court can tell from the attorneys' time entries) regardless of whether Sanchez was named as a defendant. A proper fee award must take this into account. Sanchez's application fails to do so.

Sanchez's expert determined that a $118,000 deduction was appropriate. We find that such reduction does not go far enough. Our own review of the record shows that Sanchez is clearly entitled to a fee award, but an award that must take into

account the mitigating factors in the record.  He did not bear the initial burden of those fees throughout the litigation (even though it may be true that he is ultimately responsible for his share of them).  And most importantly largely the same work that was expended to defend him was the same work used to unsuccessfully defend a non-prevailing party.  So given the discretion the Court has at making an across-the-board reduction to take into account all these factors, *e.g., Villano v. City of Boynton Beach*, 254 F.3d at 1311, we find that the most appropriate remedy in this circumstance is to reduce the award by one half of what Sanchez initially seeks in fees, which amount represents half of what he initially sought on behalf of himself *and* Abad. [D.E. 221 at 3 and 19-20].  Sanchez should therefore be awarded **$259,448.75** in attorneys' fees following this 50% reduction.  That amount fairly represents the sum of fees expended on his behalf, and his behalf alone, for the successful defense of the case.

### D.   *Sanchez's Costs Motion*

Sanchez also requests an award for costs incurred in the litigation.  The total amount requested is $13,114.08, which includes the following fees: depositions and transcripts ($12,354.08); fees for service of subpoenas ($165); witness fees for attendance at trial ($270); and fees for exemplification and the costs of making copies of any material where the copies were necessarily obtained for use in the case ($325). Because Sanchez did prevail on the FDUTPA claim, and for the reasons explained above, the Court finds he should be awarded one half of what he requested in costs. Sanchez should, therefore, be awarded **$6,557.04**.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** as follows:

1.      DRC's Renewed Motion for Attorneys' Fees [D.E. 269] should be **GRANTED IN PART and DENIED IN PART**, but its its Renewed Motion for Bill of Costs [D.E. 270] should be **GRANTED** in full.  DRC should recover **$983,086.63** from ACG and Abad in attorneys' fees and **$34,839.81** in costs for a total award of **$1,017,926.44**.

2.      Sanchez's Renewed Motion for Attorneys' Fees [D.E. 271] should be **GRANTED IN PART and DENIED IN PART**, and his Renewed Motion for Bill of Costs should be **GRANTED IN PART and DENIED IN PART**.  Sanchez should recover **$259,448.75** in attorneys' fees from DRC and **$6,557.04** in costs for a total award of **$266,005.79**.

3.      The Court should enter fee and cost judgments, pursuant to Fed. R. Civ. P. 58, in favor of DRC and Sanchez for such amounts.

4.      Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988);

*Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C.

§ 636(b)(1).

   **DONE AND SUBMITTED** in Chambers at Miami, Florida this 14th day of

September, 2016.

EDWIN G. TORRES
United States Magistrate Judge